**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| **MERRICK BANK CORPORATION,** | |
| *Plaintiff,* | **Civil Action No. 13-7756** |
| **v.** | **OPINION** |
| **VALLEY NATIONAL BANK,** | |
| *Defendant.* | |

| | |
|---|---|
| **AMERICAN EXPRESS TRAVEL RELATED SERVICES, INC. and JETPAY MERCHANT SERVICES, LLC,** | |
| *Plaintiffs,* | **Civil Action No. 14-7827** |
| **v.** | |
| **VALLEY NATIONAL BANK,** | |
| *Defendant.* | |

**THIS MATTER** comes before the Court on Plaintiff Merrick Bank Corporation's ("Merrick") and Defendant Valley National Bank's ("VNB") cross-motions for summary judgment in the matter Merrick Bank Corp. v. Valley National Bank, No. 13-7756 (D.N.J.) (the "Merrick" action), and Plaintiffs American Express Travel Related Services, Inc. ("American Express") and JetPay Merchant Services, LLC ("JetPay") and Defendant VNB's cross-motions for summary judgment in the matter American Express Travel Related Services, Inc. and JetPay

<u>Merchant Services, LLC v. Valley National Bank</u>, No. 14-7827 (D.N.J.) (the "<u>JetPay</u>" action).[1]

<u>Merrick</u> ECF Nos. 207, 208; <u>JetPay</u> ECF Nos. 113, 116-118.   The parties oppose the respective motions.  <u>Merrick</u> ECF Nos. 211, 212; <u>JetPay</u> ECF Nos. 124-27.   For the reasons stated below, Plaintiffs' motions for summary judgment are **DENIED**, and VNB's motions for summary judgment are **GRANTED in part** and **DENIED in part**.

## I.   BACKGROUND

This matter arises from the fraudulent operation and eventual collapse of Southern Sky Air Tours (d/b/a Direct Air) ("Direct Air"), a public charter operator.  Plaintiffs Merrick, JetPay, and American Express are banks and credit card processing companies that ultimately reimbursed Direct Air consumers who had paid for incomplete flights due to the company's demise.  Plaintiffs seek payment from Defendant VNB, the manager of Direct Air's escrow account, which was formed with the purpose to ensure that sufficient funds were available to refund Direct Air customers in the event that their flights were not completed.

### A.  Direct Air Relationship with Plaintiffs

A credit card purchase typically involves four parties: (1) the cardholder; (2) the cardholder's bank (the "issuing bank"); (3) the merchant's acquiring bank; and (4) the merchant.  Amex Stmt. ¶ 42.  Following an introduction by JetPay, Merrick served as Direct Air's acquiring bank from its inception in 2006 to its eventual closure in 2012.[2]  VNB Corrected R.56.1 Statement of Undisputed Facts ("VNB Stmt.") ¶¶ 55-64, <u>Merrick</u> ECF No. 209-1.[3]  JetPay, an Independent

---

[1] This Opinion concerns motions in two related cases against Valley National Bank.  As the <u>Merrick</u> and <u>JetPay</u> actions have been consolidated for "discovery, case management, and all other purposes as the Court deems appropriate," Order Dated February 4, 2015, <u>Merrick</u> ECF No. 54, this Opinion addresses the summary judgment motions in both actions.

[2] Unless otherwise noted, the facts included here are not in dispute.

[3] As VNB's three Corrected R.56.1 Statements of Undisputed Fact are substantially the same, the Court will cite to its Statement in the <u>Merrick</u> action.  <u>See</u> VNB Corrected R.56.1 Statement of

Sales Organization, enters into contractual arrangements with association member banks such as Merrick to provide credit card processing services to its merchant customers, such as Direct Air. JetPay R.56.1 Statement of Undisputed Facts ("JetPay Stmt.") ¶ 1, JetPay ECF No. 116-2.

In its capacity as an acquiring bank, Merrick cleared and settled certain credit and debit card transactions for Direct Air. VNB Stmt. Id. ¶ 63. When a cardholder purchased a flight with a credit or debit card, Merrick received a payment from the credit or debit card "issuing bank" through the applicable Card Association rules and regulations by which it is bound as a member bank. Id. ¶ 23. Merrick then made a payment to Direct Air. Id. ¶ 24. If the cardholder later disputed a card charge, the cardholder could demand the money back from its issuing bank, which credited the cardholder. Id. ¶ 25. The issuing bank then initiated a "chargeback." Id. ¶ 26. Pursuant to the Card Association regulations, Merrick is required to reimburse the card issuing bank the amount of the chargeback. Id. Once those funds are properly charged-back, Merrick would then attempt to collect the funds from Direct Air pursuant to a Merchant Agreement under which Direct Air was responsible for paying Merrick and JetPay for any chargebacks. Id. ¶ 67. Through additional agreements, JetPay also agreed to indemnify Merrick for any chargebacks it could not collect from Direct Air. Id. ¶ 68. In addition, as a credit card process, JetPay was bound through card association agreements to refund Direct Air customers directly. JetPay Stmt. ¶ 79. Direct Air was a covered merchant under Merrick's uncollectable chargeback insurance policy at all relevant times. VNB Stmt. Id. ¶¶ 59-61.

Plaintiff American Express can serve as both an acquiring bank and the issuing bank or solely as an acquiring bank. American Express R.56.1 Statement of Undisputed Facts ("Amex

Undisputed Facts - JetPay, JetPay ECF No. 120-1; VNB Corrected R.56.1 Statement of Undisputed Facts - AMEX, JetPay ECF No. 121-1.

Stmt.") ¶ 42, JetPay ECF No. 113-2.  As the acquiring bank associated with American Express credit card transactions, when a merchant processes a cardholder's American Express credit card transaction, American Express issues payment to the merchant who accepted the credit card.  Id. ¶ 43.  If a cardholder disputes a credit card charge, then he/she can seek a reversal or reimbursement for the charge from American Express by initiating a "dispute."  Id. ¶ 44.  As an acquiring bank, American Express is required to honor valid disputes and issue a reimbursement to the cardholder.  Id. ¶ 45.  American Express can then seek to charge back the merchant.  Id. ¶ 46.

In 2006, American Express entered in a Credit Card Acceptance Agreement with Direct Air, pursuant to which Direct Air accepted American Express credit cards as payment.  Id. ¶ 17. As such, it served as the acquiring bank for Direct Air purchases with an American Express card. When American Express cardholders used their credit cards to purchase tickets for Direct Air flights, American Express deposited the entire purchase amount into Direct Air's escrow account with VNB.  Id. ¶ 18.  American Express was obligated to refund payments for cancelled Direct Air flights to customers who submitted claims in accordance with American Express's dispute procedures.  Id. ¶ 47.

**B.  The Direct Air Escrow with VNB**

Direct Air was subject to regulations promulgated by the Department of Transportation (the "DOT Regulations"), which required it to maintain an escrow account in which payments made by Direct Air customers were held.  VNB Stmt. Id. ¶ 36.  On October 20, 2006, VNB and Direct Air entered into a Public Charter Depository Agreement pursuant to DOT Regulations.  Id. VNB subsequently opened the Direct Air depository account on or around October 26, 2006.  Id. ¶ 52.  Direct Air made its first deposit into the account in January 2007, and began to accept

bookings from consumers.  Id. ¶¶ 53, 93.  In its role as a depository bank, VNB also entered into a number of tripartite Depository Agreements that each involved VNB, Direct Air, and either a Direct Air carrier or another charter operator.  Id. ¶ 16.

VNB was to maintain an accounting of the funds it received from Direct Air pursuant to the DOT Regulations.  Merrick R.56.1 Statement of Undisputed Facts ("Merrick Stmt.") ¶ 12, Merrick ECF No. 207-2; JetPay Stmt. ¶ 12; Amex Stmt. ¶ 12.  The DOT Regulations provide that funds paid by passengers for services covered by the DOT Regulations are held until the air carrier certifies that the flight to which the charter operator has allocated funds has been completed.  Merrick Stmt. ¶ 18; JetPay Stmt. ¶ 18; Amex Stmt. ¶ 16.  At that point, the escrow bank must release the funds to the charter operator.  Id.  VNB filed a Form 4534 with the DOT certifying that it, along with Direct Air and an air carrier, "will completely fulfill [its] obligations" under the Depository Agreement and the DOT Regulations.  Merrick Stmt. ¶ 18; JetPay Stmt. ¶ 18.

During the course of Direct Air's operations, VNB released funds from the escrow account in response to written requests submitted by Direct Air, as well as chargebacks from Merrick and JetPay. VNB Stmt. ¶ 138.  The parties dispute whether, during the course of Direct Air's operations, VNB knew if the escrow account was operating normally.  Merrick Response to VNB Stmt. ¶ 135, Merrick ECF No. 211-21.  Specifically, they dispute if VNB was required to do a flight-by-flight accounting for Direct Air and whether VNB was to ensure that the charter operator had sufficient funds in its account at any particular time to make refunds to all passengers on cancelled flights. Id.  Plaintiffs further allege that VNB mismanaged the Direct Air account by: (1) failing to maintain a "flight by flight" accounting of passenger funds; (2) failing to verify information that Direct Air provided about the completion of flights; (3) and disbursing

undifferentiated and unsegregated funds to Direct Air for Direct Air's "Family Ties" program in violation of DOT regulations. Merrick Stmt. ¶¶ 40-71; JetPay Stmt. ¶¶ 40-71.

### C. Direct Air Closure and Subsequent Litigation

Direct Air operated until March 12, 2012 when it suspended its operations. VNB Stmt. ¶ 116. On March 15, 2012, it filed for bankruptcy. Id. ¶ 117. Deposits into the Direct Air escrow account ceased, and the account was frozen. Id. ¶ 118. Direct Air had approximately $1.017 million in its escrow account when it ceased operations. Id. ¶ 119. Merrick alleges that this number reflects a shortfall of nearly 30 million that should have been in the account had VNB taken the proper steps to ensure that the escrow account complied with DOT Regulations.

In accordance with DOT advice, customers who had paid for future flights with Direct Air initiated chargebacks through their credit cards to recoup the price of the flights. Id. ¶ 122. Merrick ultimately incurred chargebacks totaling $26.2 million. Id. ¶ 125. JetPay incurred $1.4 million in chargeback damages. JetPay Stmt. ¶ 80. American Express ultimately paid out $3.7 million in reimbursements to its cardholders for cancelled Direct Air flights. Amex Stmt. ¶ 50. Plaintiffs were barred by the bankruptcy automatic stay from seeking reimbursement of the chargebacks from Direct Air. VNB Stmt. Id. ¶ 126; Amex Stmt. ¶ 51.

The CFO of Direct Air later pled guilty to bank fraud and wire fraud. VNB Stmt. ¶ 126. He admitted to sending false financial statements to creditors, as well as submitting false release requests to VNB containing inflated passenger figures. Id. ¶¶ 131-32. In addition to the CFO, two other original owners of Direct Air have also been indicted for wire and bank fraud. Id. ¶ 133.

Merrick filed a lawsuit against JetPay in the United States District Court in the District of Utah seeking indemnification. Id. ¶ 150. In June 2016, Merrick and JetPay reached a settlement

in which JetPay paid Merrick $13.24 million.  Id. ¶ 151.  Merrick also filed a claim pursuant to its UCB policy with its insurer, Chartis.  Id. ¶ 152.   After Chartis denied Merrick's claim, Merrick filed a lawsuit against Chartis in the United States District Court for the Southern District of New York.  Id.  In December 2016, Merrick obtained a verdict on liability against Chartis.  Id. ¶ 153.  Pending motions for Judgment as a Matter of Law and for a new trial are still pending in the Chartis litigation.  Id. ¶ 153.

### D.  Procedural History

1.  <u>Merrick</u> Action

Merrick first filed suit in this District against VNB in December 2013.  ECF No. 1.  In its Second Amended Complaint ("SAC"), Merrick alleged the following ten causes of action: (1) breach of contract on behalf of Direct Air customers as intended third-party beneficiaries of the depository agreements; (2) negligence/gross negligence; (3) breach of fiduciary duty; (4) negligent misrepresentation; (5) aiding and abetting fraud; (6) conversion/aiding and abetting conversion; (7) violation of DOT Regulations, 14 C.F.R. § 380; (8) consumer fraud on Merrick and Direct Air customers; (9) breach of contract on behalf of Direct Air as assignee of the bankruptcy trustee's claims against Valley; and (10) consumer fraud on Direct Air.  SAC ¶¶ 82-141, <u>Merrick</u> ECF No. 64.  In an Opinion dated March 31, 2015, the Court dismissed Merrick's claims for violations of DOT Regulations with prejudice, finding they do not afford a private right of action.  <u>Merrick Bank Corp. v. Valley National Bank</u>, No. 13-7756, 2015 WL 1472497, at *5-6 (D.N.J. Mar. 31, 2015) ("<u>Merrick I</u>").  Merrick filed a Third Amended Complaint ("Merrick TAC").  <u>See</u> Merrick TAC, ECF No. 64.  In an Order dated January 29, 2016, the Court dismissed Merrick's breach of contract claim on behalf of Direct Air customers and consumer fraud claims with prejudice.  <u>Id.</u>

Six counts remain at issue in <u>Merrick</u>: (2) negligence/gross negligence; (3) breach of fiduciary duty; (4) negligent misrepresentation; (5) aiding and abetting fraud; (6) conversion/aiding and abetting conversion; (9) and breach of contract on behalf of Direct Air as assignee of the bankruptcy trustee's claims against Valley. VNB moves for summary judgment against Merrick on all counts. Merrick moves for summary judgment on counts two, three, and four.

2. <u>JetPay</u> Action

JetPay and Amex jointly filed a complaint against VNB on December 16, 2014. <u>JetPay</u> ECF No.1. In March 2016, JetPay and Amex filed an Amended Complaint against VNB ("JetPay Am. Compl."), alleging the following eleven causes of action: : (1) breach of contract; (2) negligence/gross negligence; (3) breach of fiduciary duty; (4) negligent misrepresentation; (5) aiding and abetting fraud as to consumers; (6) aiding and abetting fraud as to JetPay and Amex; (7) conversion/aiding and abetting conversion; (8) violation of DOT Regulations, 14 C.F.R. § 380; (9) consumer fraud on charter customers; (10) consumer fraud on Direct Air; and (11) indemnification. JetPay Am. Compl. ¶¶ 74-190, <u>JetPay</u> ECF No. 49. In an Order dated October 28, 2016, the Court dismissed counts One, Eight, Nine, Ten, and Eleven of JetPay and Amex's Amended Complaint. <u>JetPay</u> ECF No. 98.

Six counts remain at issue in <u>JetPay</u>: (2) negligence/gross negligence; (3) breach of fiduciary duty; (4) negligent misrepresentation; (5) aiding and abetting fraud as to consumers; (6) aiding and abetting fraud as to JetPay and Amex; and (7) conversion/aiding and abetting conversion. VNB moves for summary judgment on all counts. JetPay and Amex seek partial summary judgment on their claims for negligence and breach of fiduciary duty. Amex Br. at 1, <u>JetPay</u> ECF No. 113-1; JetPay Br. at 1, <u>JetPay</u> ECF No. 116-1.

# I.  LEGAL STANDARD

Pursuant to Fed. R. Civ. P. 56(c), a motion for summary judgment will be granted if the pleadings, depositions, answers to interrogatories, and admissions on file, together with available affidavits, show that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law.  See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). "[S]ummary judgment may be granted only if there exists no genuine issue of material fact that would permit a reasonable jury to find for the nonmoving party." Miller v. Ind. Hosp., 843 F.2d 139, 143 (3d Cir. 1988).  All facts and inferences must be construed in the light most favorable to the non-moving party.  Peters v. Del. River Port Auth., 16 F.3d 1346, 1349 (3d Cir. 1994).

# II.  ANALYSIS

## A.  Claim Preclusion

In Merrick I, the Court dismissed Merrick's claims for violations of 14 C.F.R. § 380 because there is no private right of action under the DOT Regulations.  2015 WL 1472497, at *5-6.  VNB argues that Plaintiffs' negligence, breach of fiduciary duty, and conversion claims are merely "back door" attempts to enforce the DOT Regulations, and must therefore be dismissed. See VNB Br. as to Merrick at 16-18, Merrick ECF No. 208-22; VNB Br. as to JetPay at 17-19, JetPay ECF No. 117- 2; VNB Br. as to Amex at 16-18, JetPay ECF No. 118-4.  The Court disagrees.

The absence of a private right of action may preclude common-law tort claims where the common law claim is based on a violation of the statute.  See Astra USA, Inc. v. Santa Clara Cty., 563 U.S. 110, 117-19 (2011) (holding that a contract claim based on the violation of a policy that merely incorporated statutory language was "in essence a suit to enforce the statute itself," and

therefore unenforceable in a private action); Umland v. PLANCO Fin Servs., 542 F.3d 59, 66 (3d Cir. 2008) (holding that plaintiff could not bring common-law contract claim where the alleged implied contractual term reflected the provisions of the Federal Insurance Contributions Act, which did not provide a private right of action); Mankodi v. Trump Marina Assocs. LLC, 525 Fed. App'x 161, 166 (3d Cir. 2013) (holding that plaintiff's causes of action for breach of contract and conversion were really violations of the Casino Control Act where the complaint alleged, "when defendant's personnel breached the regulations of the New Jersey Gaming Control Commission . . . it breached the gaming agreement . . . that it had with plaintiff."). In other words, a plaintiff cannot assert a common law claim by simply stating that a defendant has violated a statute that does not in itself afford a private right of action.

But that is not the case here. Plaintiffs' common law claims are not directly premised on violations of the DOT Regulations. In contrast to the cases cited by VNB, Plaintiffs here have asserted an independent basis for their common law claims. They allege that VNB was negligent in its failure to supervise Direct Air's depository account; that VNB owed Plaintiffs a fiduciary duty when it became an escrow agent to the depositors; and that VNB interfered with the possessory rights of passengers and Plaintiffs to the money in the account. See Merrick TAC ¶¶ 98-109, 123-29; JetPay Am. Comp. ¶¶ 90-114, 152-160. Therefore, Plaintiffs claims are not—contrary to VNB's argument—based solely on a "standard of conduct . . . established by a regulation under which no private right of action exists." VNB Reply to Merrick at 5, Merrick ECF No. 216. Rather, Plaintiffs allegations are based on standards provided by common law tort, and are not predicated on violations of the DOT Regulations.

**B. Breach of Fiduciary Duty**

Plaintiffs assert a breach of fiduciary duty claim on their own behalf and as subrogees of the Direct Air passengers. JetPay Am. Compl. ¶¶ 104-114; Merrick Reply at n.3, <u>Merrick</u> ECF No. 215. VNB contends that it must be granted summary judgment as VNB did not owe a fiduciary duty to either the Plaintiffs or the passengers of Direct Air. The Court agrees.

In order to establish a cause of action for a breach of fiduciary duty in New Jersey,[4] a plaintiff must show that the defendant had a duty to the plaintiff, that the duty was breached, that injury to plaintiff occurred as a result of the breach, and that the defendant caused that injury. <u>In re ORFA Sec. Litig.</u>, 654 F.Supp. 1449, 1457 (D.N.J. 1987). Generally, a fiduciary relationship arises only in cases in which one of the parties "'expressly reposes a trust or confidence in the other' or because of the circumstances 'such a trust or confidence is necessarily implied.'" <u>United Jersey Bank v. Kensey</u>, 306 N.J.Super. 540, 553 (App. Div. 1997).

No such relationship exists here between Plaintiffs and VNB. Plaintiffs are sophisticated commercial entities experienced in the card processing industry. Plaintiffs have never been in privity with VNB, were not parties to the Depository Agreement, and did not rely on the Depository Agreement in establishing their own dealings with Direct Air.

In the analogous case, <u>Synovus Bank of Tampa Bay v. Valley National Bank</u>, 487 F. Supp. 2d 360 (S.D.N.Y. 2007), an acquiring bank asserted a breach of fiduciary claim against VNB for allegedly mismanaging the escrow account it held for the defunct air carrier, Southeast Airlines, pursuant to DOT Regulations. The <u>Synovus</u> court found that VNB did not owe a fiduciary duty to the acquiring bank, f/k/a United Bank and Trust Company ("United") as "the nature of the

---

[4] Unless otherwise noted, the parties do not dispute that New Jersey law governs the common law claims at issue.

relationship between [VNB] and United . . . was not one of confidence and special trust." 487 F. Supp. 2d at 373. The same is true under New Jersey law.

Plaintiffs further contend that VNB breached a fiduciary duty to them as subrogees of passengers. This is unavailing for the reasons articulated above. Like Plaintiffs, Direct Air passengers did not have any relationship with VNB. Plaintiffs counter that VNB served as an "escrow agent" to the passengers and—by extension—to Plaintiffs. They argue that "Direct Air passengers, Merrick and VNB all understood VNB's role as escrow agent." Merrick Br. at 8. But the record does not support such a finding. Indeed, the cases cited by Plaintiff identifying a fiduciary relationship between an escrow agent and both parties all involve a written agreement between the parties and the alleged agent. See Snyder v. Dietz & Watson, Inc., 837 F. Supp. 2d 428, 444 (D.N.J. 2011) (employer defendants had fiduciary duty as escrow holders to employees who were party to a collective bargaining agreement); In re Matter of Hollendonner, 102 N.J. 21, 23 (1985) (attorney breached fiduciary duty to both buyer and seller of a house who had contracted with attorney to hold funds in escrow); Laffan v. Santander Bank, N.A., No. 13-4040, 2014 WL 2693158, at *6 (E.D. Pa. June 12, 2014) (finding that on a motion to dismiss, plaintiff pled breach of fiduciary duty against mortgagor bank who also served as an escrow agent pursuant to a mortgage agreement). None involves the depository bank of an escrow account. Accordingly, Plaintiffs have not shown that VNB owed them or the passengers a fiduciary duty.

### C. Negligence

The parties each seek summary judgment on the issue of whether VNB acted negligently towards defendants Merrick, Amex, and JetPay in its maintenance of Direct Air's escrow account. VNB argues that it must be awarded summary judgment because it owes no duty towards Plaintiffs. The Court disagrees.

To establish a cause of action for negligence, a plaintiff must prove the following four elements: "(1) duty of care; (2) a breach of that duty; (3) proximate cause, and (4) actual damages." Townsend v. Pierre, 221 N.J. 36, 51 (2015) (citations omitted). Whether or not a legal duty exists within any given set of facts is a question of law to be decided in the first instance by the court. Wang v. Allstate Ins. Co., 125 N.J. 2, 15 (1991). In determining whether a duty exists, the court must engage in a complex analysis that balances a number of related factors including "the risk, the foreseeability, or the likelihood of injury all weighed against the social utility of the actor's conduct, the opportunity and ability to exercise care to prevent the injury and the consequences of placing the burden of the duty on the actor." J.S. v. R.T.H., 155 N.J. 330, 337, 714 A.2d 924, 928 (1998) (citing Hopkins v. Fox & Lazo Realtors, 132 N.J. 426, 439 (1993)).

Here, any shortfall in the escrow account would affect the ability of customers to recoup the amount they paid in for future, incomplete flights. If a flight did not occur, customers who paid their tickets by check had no other recourse than to seek reimbursement from the escrow account. Customers are therefore a plainly foreseeable group that would be affected by insufficiencies in the escrow account.

By extension, entities with a foreseeable obligation to reimburse customers—including American Express JetPay, and Merrick—are also foreseeable plaintiffs. Under universal Credit Card Agreements, customers who paid with credit or debit card were reimbursed by their issuing banks. These banks in turn were reimbursed by Direct Air's acquiring bank, Merrick and credit card processor, JetPay. Likewise, American Express cardholders were reimbursed by American Express. But Plaintiffs' only recourse was to pursue Direct Air itself. Therefore, Plaintiffs bear the risk of a financial loss in the case of an uncollectable chargeback, and are foreseeably affected by any shortfall in the escrow account. The harm here is precisely the type of foreseeable

economic damage that New Jersey courts recognize justifies the imposition of a duty. See People Express Airlines, Inc. v. Consol. Rail Corp., 100 N.J. 246, 263 (1985) (finding that a railroad owed duty to airline for damages it suffered due to the evacuation of its offices following an accident at a nearby railroad yard).

VNB contends that "New Jersey courts do not recognize a duty by banks to a third party absent a statutory duty, contract or special relationship with that party." VNB Opp'n at 13, Merrick ECF No. 212. However, these cases do not reflect the situation presented here. Several of the cases cited by VNB pertain to a commercial bank's duties during the check depositing process. See Brunson v. Affinity Federal Credit Union, 199 N.J. 381, 407 (2009) (holding that bank did not owe duty to victim of identity theft who was incarcerated after importer used victim's identity to cash fraudulent checks); City Check Cashing, Inc. v. Manufacturers Hanover Trust Co., 166 N.J. 49, 62 (2001) (holding that bank had no duty of care to plaintiff check cashing service when the bank incorrectly verified the authenticity of a check); Penn. Nat'l Turf Club, Inc. v. Bank of West Jersey, 385 A.2d 932, 934 (N.J. App. Div. 1978), cert. denied, 77 N.J. 506 (1978) (dismissing negligence claim where bank deviated from good banking practices by failing to dishonor a depositor's returned checks within midnight deadline required by the Uniform Commercial Code). Other cases concerned a bank's inappropriate transfer of funds to third parties. See Wolens v. Morgan Stanley Smith Barney, LLC, 155 A.3d 1, 3 (N.J. App. Div. 2017) (holding that defendant bank owed no duty to daughter of deceased account holder whose account was changed from one solely in her name to a joint account with the daughter's sibling); ADS Associates Group, Inc. v. Oritani Sav. Bank, 219 N.J. 496, (2014) (holding bank had no duty of care to a business venturer whose co-venturer transferred funds from one corporate business

checking account to other accounts). None involved the alleged mismanagement of an escrow account.

Furthermore, considerations of fairness and policy support a finding that VNB owes a duty of care to Plaintiffs. First, such a duty does not impose an additional burden on VNB, in light of its obligations under the DOT Regulations and the Depository Agreement with its customer, Direct Air. Second, the foreseeability of the harm at issue, as outlined above, makes the finding of a duty particularly just. See Carter Lincoln-Mercury, Inc., Leasing Div. v. EMAR Grp., Inc., 638 A.2d 1288, 1294 (N.J. 1994) ("[T]he more particular is the foreseeability that economic loss will be suffered by the plaintiff as a result of defendant's negligence, the more just is it that liability be imposed and recovery allowed."). Finally, a finding of common-law duty of care furthers the policy goals of the existing statutory scheme by protecting consumers from financial loss in the case of a flight operator's insolvency.

The Court next turns to the element of breach. In New Jersey, a breach of duty is a question of fact. Rustay v. Consolidated Rail Corp., 775 F. Supp. 161, 163 (D.N.J. 1991) (citations omitted). Plaintiffs claim that VNB breached its duty of reasonable care by failing to conduct a flight-by-flight accounting or holding customers' deposits until the relevant flight was complete. VNB, on the other hand, maintains that it properly maintained the charter accounts. Numerous questions of fact over VNB's accounting practices preclude summary judgment for either VNB or for Plaintiffs. For example, the parties dispute whether VNB normally conducted a flight-by-flight accounting for other charter-operator clients, and whether its treatment of Direct Air departed from its typical procedures. See VNB Resp. to Merrick Stmt. ¶¶ 36-46, ECF No. 212-1. The parties further dispute whether documentation that Direct Air provided to VNB revealed incorrect amounts. See Merrick Resp. to VNB Stmt. ¶ 139, ECF No. 211-21. Therefore,

whether VNB breached its duty of reasonable care in its management of the escrow account is a question of fact for the jury.

### D. Breach of Contract

VNB and Merrick each seek summary judgment on Merrick's breach of contract claim against VNB as successor-in-bankruptcy to Direct Air. Specifically, Merrick claims that VNB breached the Depository Agreement with Direct Air by failing to provide a flight-by-flight accounting and to hold all passenger deposits until it received certification that the flight was complete pursuant to Sections 1.3 and 2.2. Merrick Br. at 23-24. VNB argues that Merrick has not established the elements of a contract claim, and that the claim is also barred by the doctrine of in pari delicto. The Court finds that fact issues preclude summary judgment for either VNB or Merrick.

To establish a breach of contract claim, a plaintiff must "prove a valid contract between the parties, the opposing party's failure to perform a define obligation under the contract, and the breach caused the claimant to [sustain] damages." EnviroFinance Group LLC v. Environmental Barrier Co., LLC, 113 A.3d 775, 787 (N.J. App. Div. 2015) (citing Murphy v. Implicito, 920 A.2d 678 (N.J. App. Div. 2007). Here, Merrick alleges that VNB breached the following terms of the Depository Agreement:

> 1.3 Bank shall maintain a separate account (an "Account") for each charter, flight or rotation but shall be under no obligation to segregate any funds received by it between inbound and out-bund flights in the absence of express instructions to do so. Bank may use funds deposited pursuant to this Agreement in its general banking business and may commingle such funds with its general funds.
> . . . .
> 2.2. . . . Bank shall not pay to or remit any funds from an Account maintained for Charter Operator prior to two (2) Business Days after completion of such Charter.

VNB does not dispute its management of the Direct Air escrow account. Instead, it argues that, notwithstanding the language of the Depository Agreement, its management of the escrow

account was consistent with Direct Air and VNB's performance during the course of the contract, and therefore did not constitute breach. Genuine issues of material fact exist as to whether Direct Air and VNB established a course of performance that permitted VNB to release funds before they received certification of the flight's completion. For example, contrary to Merrick's assertion, VNB states that it was ordinarily Direct Air's responsibility to allocate particular funds into the accounts of particular flights. <u>See</u> VNB R. 56.1 Resp. ¶¶ 44-45. The parties also dispute whether Direct Air ever provided VNB with detailed passenger information for it to allocate funds to different flights, or whether VNB employees expressly declined to manage these files. <u>Id.</u> ¶¶ 40-43. These factual questions preclude summary judgment on the issue of breach. <u>See</u> <u>CSX Transp. Inc. v. Schuykill Rail Car Inc.</u>, No. 13- 2014, WL 2864781, (M.D. Pa. June 24, 2014) (finding that summary judgment was precluded where a genuine issue of material fact existed as to whether parties established a course of conduct that modified a timing rule in the agreement at issue to permit defendants to dispute invoices outside a sixty day window).

VNB also contends that it must be granted summary judgment because Direct Air breached first, and that it cannot establish any damages because Direct Air "received the exact amount it requested to be released from the account at the time requested." VNB Opp'n at 28. VNB further presents the affirmative defense of <u>in pari delicto</u>, arguing that even if Direct Air could establish damages, the claim is barred because it bears fault for the claim. <u>Id.</u> at 29-30. Merrick counters that Direct Air did not breach as the actions of its officers cannot be imputed to the corporation. As such, the corporation was damaged because VNB's alleged breached caused a $30 million shortfall in Direct Air's escrow account, which ultimately led to its insolvency. Merrick Br. at 24.

The parties' arguments all hinge on one question: can the conduct of the officers of Direct Air be imputed to the company? If so, then Direct Air breached, benefited financially, and is barred from bringing a contract claim. If not, then Direct Air did not breach, and may have suffered damages. Generally, fraud may be imputed to a corporation "when the officer commits the fraud (1) in the course of his employment, and (2) for the benefit of the corporation." Official Comm. of Unsecured Creditors v. R.F. Lafferty & Co., 267 F.3d 340, 354-55 (3d Cir. 2001). Here, fact questions preclude summary judgment on this issue. Although the parties agree that the CFO of Direct Air pled guilty to bank and wire fraud, and that two other officers have also been indicted on the same charges, they appear to dispute whether the fraud was for the benefit of Direct Air. VNB states that "all funds withdrawn were received by Direct Air or its vendors; and all withdrawals were used for business purposes," VNB Opp'n at 27, but does not provide any evidence as to how the money was received or spent. VNB further asserts that "the funds released to Direct Air . . . were not diverted to the Direct Air owners or other person for their own personal reasons" based on the deposition of Jessica Murphy, counsel for bankruptcy trustee. VNB Stmt. ¶ 147. But Merrick denies this, submitting that the Indictment filed against Direct Air former officers Judy Tull and Kay Ellison alleges that the individuals "in order to enrich themselves, diverted for their personal use funds paid by direct Air passengers." Merrick Resp. to VNB Stmt. ¶ 147. Neither party has provided direct evidence on whether the officers' ultimately used the funds for personal purposes. Accordingly, summary judgment on the breach of contract claim must be denied.

### E. Negligent Misrepresentation

Plaintiffs assert claims against VNB for negligent misrepresentation. In essence, they claim that VNB misrepresented to them that it operated Direct Air's escrow account in accordance

with DOT Regulations.  <u>See</u> Merrick TAC ¶¶ 110-14; JetPay Am. Compl ¶¶ 115-23.  VNB seeks summary judgment on this issue, arguing that Plaintiffs have not demonstrated justifiable reliance.  The Court agrees.

The elements for a claim of negligent misrepresentation are: "(1) an incorrect statement, (2) negligently made, (3) justifiably relied on, (4) resulting in economic loss." <u>Andreula v. Capital One Financial Corp.</u>, No. 14-5276, 2016 WL 6953422, at *3 (D.N.J. Nov. 28, 2016) (internal quotations omitted); <u>see also</u> <u>H. Rosenblum, Inc. v. Adler</u>, 93 N.J. 324, 334 (1983) ("An incorrect statement, negligently made and justifiably relied upon, may be the basis for recovery of damages for economic loss or injury sustained as a consequence of that reliance.").

1.  <u>Communications to Merrick and JetPay</u>

The communications at issue to Merrick and JetPay's claims occurred in November and December of 2006.  First, On November 10, 2006, Lori Rooney of VNB emailed Trent Voigt at JetPay the following message:

> This will confirm that Valley National Bank has been appointed Depository Bank for Southern Sky Air d/b/a Myrtle Beach Direct.  We have opened a depository account for which all passenger funds are to be deposited per the regulations of the U.S. Department of Transportation.  The following is our wire transfer instructions for depositing funds into the depository account:
>
> [Wire transfer instructions omitted]

Decl. of James Regan, Ex. Z, ECF No. 207-30.

Later, on December 6, 2006, the Global Escrow Services department of VNB mailed Trent Voigt of JetPay a letter, which stated in its entirety:

> Re: Public Charter Depository Agreement dated as of October 20, 2006 by and among Southern Sky Air & Tours d/b/a Myrtle Beach Direct Air & Tours, Sky King, Inc. and Valley National Bank
>
> This letter serves as confirmation that Valley National Bank has been appointed Depository Bank by Southern Sky Air & Tours d/b/a Myrtle Beach Direct Air &

Tours. All parties have executed the above referenced Depository Agreement and Valley National Bank has opened a depository account pursuant to the regulations of the U.S. Department of Transportation ("DOT").[5]

Southern Sky Air & Tours d/b/a Myrtle Beach Direct Air & Tours has filed their charter program with the DOT and has been issued filing number PC 06-163.

Decl. of James Regan, Ex. Y, ECF No. 207-29.

Merrick alleges that it "reasonably and justifiably relied upon VNB's representation in deciding to become the acquiring bank for Direct Air and in deciding to maintain that relationship." Merrick TAC ¶ 112. VNB argues that Merrick did not actually rely on VNB's representations in its decision making, and even if it did, the reliance would not be justified. VNB Br. as to Merrick at 10-11.

Although a fact question exists as to whether Merrick did in fact rely on VNB's assertions, the Court agrees with VNB that such reliance, as a matter of law, would be unjustified. Whether a party's reliance is justified for purposes of negligent misrepresentation is a fact-specific inquiry. See Andreula, 2016 WL 6953422, at *4 (finding that former employee could not justifiably rely on a statement that he would not be fired for collecting two incomes where he knew he was an at will employee). The Third Circuit has stated that a variety of factors should be considered in determining whether a plaintiffs' reliance was reasonable, including: "(1) the existence of a fiduciary relationship; (2) plaintiffs' opportunity to detect the fraud; (3) the sophistication of the plaintiffs; (4) the existence of long-standing business or personal relationships; and, (5) access to

---

[5] Merrick appears to allege that VNB made additional representations that in the event Direct Air "ceased operations," VNB "would release funds on transactions that could be proven to have been charged back." Merrick Stmt. ¶ 73. However, Merrick has not pointed to an actual statement made by VNB or its employees. This alleged statement cannot therefore serve as a basis for a negligent misrepresentation claim.

20

the relevant information." <u>Kline v. First Western Gov't Secs., Inc.</u>, 24 F.3d 480, 488 (3d Cir.),

<u>cert. denied</u>, <u>Arvey, Hodes, Costello & Burman v. Kline</u>, 513 U.S. 1032 (1994).

Here, the examination of each factor compels the conclusion that Merrick's reliance was not justified. As explained above, VNB owed no fiduciary duty to JetPay or Merrick. Plaintiffs are sophisticated financial institutions who were each aware of the DOT Regulations. Plaintiffs did not have a longstanding relationship of trust with VNB; indeed, Merrick and VNB did not even communicate directly. Although Merrick could not access VNB's internal escrow management guidelines or VNB's communications with Direct Air, Merrick was in a position to monitor Direct Air—including the details of its escrow account with VNB—as its acquiring bank.

Moreover, the November email and the December letter do not change this conclusion. They simply convey that, pursuant to the DOT Regulations, VNB had been appointed the depository bank for Direct Air—not the specifics of how the account would be managed. Finally, the record shows that Merrick considered other factors before it agreed to become Direct Air's acquiring bank, including requiring Direct Air to become a covered merchant under Merrick's uncollectable chargeback insurance. In light of these factors, it would be unreasonable for Merrick or JetPay to rely on the two statements to make its final determination for Merrick to serve as Direct Air's acquiring bank.[6] Summary judgment is granted in favor of VNB.

2. Communications to American Express

American Express bases its negligent misrepresentation claim on two alleged representations: (1) a copy of the Depository Agreement between VNB and Direct Air on Direct Air's website, which it observed in March of 2012; and (2) a certification VNB signed pursuant

---

[6] Because the Court finds that Plaintiffs JetPay and Merrick's alleged reliance on VNB's statements could not be justified, it does not consider VNB's alternate arguments.

to DOT Regulations stating that the Depository Agreement "complies with § 380.34 [and] § 380.34a of the DOT's Regulations, dated February 1, 2010." See Amex Stmt. ¶¶ 8, 26-30; Goldstein Decl., Exs. 6, 15. American Express claims that as a result, it understood that "VNB was obligated to maintain sufficient funds in the escrow account to cover all prepaid purchases for future flights." Amex Stmt. ¶ 28. American Express alleges that it "relied on the fact that Direct Air had an escrow account with VNB when assessing the risk associated with doing business with Direct Air and considering whether to continue to accept Direct Air as an American Express merchant." Id. ¶ 30. VNB seeks summary judgment on American Express's negligent misrepresentation claim, arguing that it made no representations of fact to American Express on which it could have relied. VNB Br. at 8-9, JetPay ECF No. 118-4. The Court agrees.

As an initial matter, the Court agrees with VNB that the copy of the Depository Agreement does not constitute a factual representation by VNB. It was posted on Direct Air's website, by Direct Air. VNB did not control and is not responsible for the Direct Air website. Even assuming that VNB is deemed to have communicated through Direct Air's website, the Depository Agreement does not constitute a representation of fact as to the manner in which VNB would operate Direct Air's depository account. It is merely a document showing that VNB and Direct Air entered into a Depository Agreement. Although the document lays out the provisions by which VNB and Direct Air agreed and intended to abide, it is not a statement regarding how the account was actually maintained. Therefore, American Express's reliance on the mere existence of the Depository Agreement as an indication of how the depository account operated is unreasonable.

Likewise, the certification also fails to constitute a factual representation by VNB as to how the escrow account operated. The certification states that VNB and Direct Air "certify that

we have entered into a depository agreement . . . . This agreement complies with (§380.34) (§380.34a) of DOT's Regulations." Goldstein Decl. Ex. 6. Again, the certification is merely a statement that the Depository Agreement itself complies with the DOT Regulations, and not a statement on the operation of the escrow account itself.

Furthermore, the record shows that American Express did not actually rely on either of the statements at issue here in making its decision allow Direct Air to become an American Express merchant or to continue this relationship with Direct Air. American Express entered into an agreement with Direct Air in 2006. The record shows that American Express reviewed Direct Air's website, and noted the existence of the Depository Agreement on March 12, 2013— three days before Direct Air ceased operations. Goldstein Decl. Ex. 15. It therefore could not have relied on the website as a deciding factor in whether to continue its relationship with Direct Air. Similarly, the certification that American Express has submitted is dated February 1, 2010, nearly four years after it initially accepted Direct Air as a merchant. Since American Express did not rely on the certification to accept Direct Air as a merchant, any reliance on the certification in its decision to maintain Direct Air's status is not justified. The Court grants VNB summary judgment on this claim.

**F. Aiding and Abetting Fraud**

1. Aiding and Abetting Fraud as Subrogees of Direct Air Passengers

Merrick brings an aiding and abetting claim solely as subrogees of Direct Air passengers' claims.[7] See Merrick TAC ¶¶ 115-22. JetPay and American Express also bring aiding and

---

[7] Merrick does not appear to dispute that its aiding and abetting claim is brought as subrogees of the Direct Air passengers. Indeed, all of Merrick's allegations focus on Direct Air's alleged fraud against its passengers. See Merrick TAC ¶¶ 115, 120 (alleging that "Direct Air made representations through its website to passengers that advance monies were . . . directed to an escrow account at VNB operated in accordance with DOT guidelines" and that "VNB gave

abetting claims as subrogrees of Direct Air passengers. JetPay Am. Compl. ¶¶ 124-34. VNB argues that—as an initial matter—Plaintiffs cannot sustain this claim because they cannot be subrogated to the claims of Direct Air passengers. VNB Br. as to Merrick at 25-27. The Court agrees.

To establish equitable subrogation in New Jersey, a plaintiff must show that (1) it paid a debt to a third party for which it was not primarily liable, (2) "in the performance of a legal duty or for the protection of a legal right," (3) and not as a "mere stranger or volunteer," (4) it paid the debt in full, and (5) equity favors subrogation." Schmid v. First Camden Nat'l Bank & Trust Co., 22 A.2d 246, 254 (N.J. Ch. 1941). See also Jorge v. Travelers Indem. Co., 947 F. Supp. 150, 155 (D.N.J. 1996) (holding that "subrogation applies where a party, not acting voluntarily, but under some compulsion pays a debt or discharges an obligation for which another is primarily liable and which in equity and good conscience ought to be discharged by the latter.").

The parties only dispute the first element: whether Plaintiffs, in completing chargebacks pursuant to the Card Association agreements they were party to, are deemed to have paid a debt to a third party for which it was not primarily liable. VNB contends that Plaintiffs did not, because the chargeback payments that they made were their own obligations. They therefore did not pay a debt on behalf of a third party. The Court agrees. In the analogous case NOVA Information Systems Inc. v. Greenwich Ins. Co., the Eleventh Circuit Court of Appeals held that the credit card processor plaintiff (NOVA) could not be subrogated to the claims of passengers

---

substantial assistance to Direct Air in committing the foregoing fraud by VNB's breach of its duty to charter participants to properly manage the escrow account."). Merrick alleges "to the extent passengers suffered losses and were reimbursed by Merrick, Merrick is equitably subrogated into the claims of those passengers." Merrick TAC ¶ 122.

who had purchased tickets for uncompleted cruises against Defendant surety company, Greenwich Insurance. 365 F. 3d 996 (11th Cir. 2004). The court reasoned:

> Greenwich was obligated to pay Premier passengers who made a claim for reimbursement under the surety bond. NOVA, on the other hand, was obligated to reimburse First Union as a result of reimbursements filed by Premier passengers with their card-issuing banks. Although, in essence, both NOVA and Greenwich were ultimately responsible for reimbursing Premier passengers—NOVA for those passengers who requested reimbursement from their card-issuing banks, and Greenwich for those passengers who requested reimbursement under the bond— their obligations were, as the district court correctly noted, "separate and distinct."

Id. at 1005-06.

This Court finds that the Eleventh Circuit's reasoning applies with equal force here. Here, Plaintiffs paid their own debts to the card issuing banks. Merrick, contends that "as long as the escrow account had sufficient funds, [VNB] was responsible for reimbursing the passengers or Merrick." Merrick Opp'n at 26. But the relationship between a Plaintiff and VNB does not matter for an equitable subrogation analysis. Rather, courts consider the relationship between the plaintiff and the subrogated third party. Here, Merrick, American Express, and JetPay each had a legal obligation to complete chargeback requests from passengers regardless of VNB's ability to reimburse them.

Furthermore, VNB's position comports with Third Circuit precedent suggesting that equitable subrogation is only available where the party seeking subrogation has paid for the liabilities of the third party. In Citizens, the Third Circuit held that a plaintiff bank could not be subrogated to the claims of third party customers whom it had reimbursed for losses due to fraudulent transactions. The court reasoned:

> Citizens' equitable subrogation claim fails because, as the complaint establishes, it did not pay a debt on behalf of its customers. Rather, it re-credited its customers' bank accounts for the amounts of the fraudulent transactions pursuant to its obligations under the Uniform Commercial Code . . . Given that Citizens did not plead that the payments it made to its customers were in satisfaction of a debt that

> ought to have been paid by RTI, we will affirm the District Court decision on this
> ground.

Id. Likewise, here Plaintiffs did not pay a debt on behalf of the Direct Air passengers, but re-credited their accounts pursuant to its contracts with credit card companies. Therefore, Plaintiffs cannot establish that they paid claims for which they were not liable, and cannot be subrogated to the passengers' aiding and abetting fraud claims.[89]

### 2. Aiding and Abetting Fraud as to JetPay and American Express

JetPay and American Express bring an aiding and abetting fraud claim on their own behalf. See JetPay Am. Compl. ¶¶ 135-51. Specifically, they allege that Direct Air made representations to them that "advanced monies were . . . directed to an escrow account operated in accordance with DOT guidelines that prevented the release of monies until the passenger's flight had been completed." Id. ¶ 138. They further allege that VNB knew that this statement was false and "gave substantial assistance to Direct Air . . . by allowing Direct Air to deposit and remove escrow funds without complying with the DOT regulations." Id. ¶ 143. VNB seeks summary judgment on the basis that Plaintiffs have not shown that it was aware of Direct Air's fraud, or that it knowingly assisted in the fraud. The Court agrees.

"Under New Jersey law, aiding and abetting requires a plaintiff to show that the principal performed an unlawful act; and the defendant knowingly and substantially assisted in the principal's violation, and was generally aware of his role as part of an overall tortious activity at the time he provided assistance." Delzotti v. Morris, No. 14-7223, 2015 WL 5306215, at *8

---

[8] Because Merrick has not advanced any additional arguments why it has standing to bring an aiding and abetting fraud claim against VNB, the Court does not reach the merits of its aiding and abetting fraud claim with respect to Merrick.

[9] The parties also dispute which law governs for claims on behalf of passengers. See VNB Br. as to Merrick at 11-12. The Court does not reach the choice of law issue because Plaintiffs cannot bring its aiding and abetting claims on behalf of passengers.

(D.N.J. Sept. 10, 2015); <u>see also</u> Restatement (Second) of Torts § 876(b) (followed by <u>Tarr v. Ciasulli</u>, 853 A.2d 921, 929 (N.J.2004)); <u>see also</u> <u>Failla v. City of Passaic</u>, 146 F.3d 149, 158 (3d Cir.1998) (noting that New Jersey adopts a definition of civil aiding and abetting liability consistent with the Restatement (Second) of Torts § 876(b)).

The parties do not dispute whether the principal, Direct Air, performed an unlawful act by making misrepresentations to JetPay and American Express. Rather, they dispute whether VNB knew of Direct Air's fraudulent activity, and substantially assisted in the violation. Here, the record does not support any inference that VNB was aware of Direct Air's fraud or that it was "generally aware" of assisting Direct Air in its unlawful conduct.

American Express and JetPay's primary piece of evidence that VNB was aware of Direct Air's fraud is that VNB had dealt with a similar merchant in the past. <u>See</u> Amex Opp'n at 21-22, <u>JetPay</u> ECF No. 124. VNB previously served as the depository bank for Southeast Airlines from 2000 to 2004. Amex Stmt. ¶ 113. When Southeast shut down in 2004, there was a $10.5 million shortfall in the escrow account. <u>Id.</u> ¶ 114. VNB then received a letter dated August 21, 2006, from the DOT informing it that the DOT had identified "several violations of the Department's charter regulations" by VNB. <u>See</u> Goldstein Decl., Ex. 23, <u>JetPay</u> ECF No. 113-26. American Express argues that the experience with Southeast "put VNB on notice that it was participating in an illegal and tortious activity by failing to comply with DOT Regulations." Amex Opp'n at 21.

Plaintiffs' theory fails because there is no indication from the DOT letter that Southeast had committed a fraud. Plaintiffs point to no other evidence indicating that Southeast had committed fraud. Accordingly, VNB had no reason to know that its conduct with respect to Southeast aided fraud, and would have no reason to know that the same conduct with respect to Direct Air would also assist fraud.

Instead, VNB has presented evidence in the form of employee affidavits that it was not aware of Direct Air's fraud. See Rooney Cert. ¶ 33, JetPay ECF No. 117-8. In addition, an Indictment by the US Attorney's office against the officers of Direct Air identify VNB as a victim, along with Merrick and JetPay. Haworth Cert., Ex. KK, JetPay ECF No. 117-18. Accordingly, VNB is granted summary judgment on JetPay and American Express's aiding and abetting fraud claim.

### G. Conversion / Aiding and Abetting Conversion

1. Conversion

VNB seeks summary judgment on Merrick's conversion claims. Specifically, VNB argues that the direct conversation claims fail because VNB did not exercise dominion or control over the funds in the escrow account. The Court agrees.

"The tort of conversion is the wrongful exercise of dominion and control over property owned by another in a manner inconsistent with the owner's rights." Keon Hee Lee v. BSI Financial Servs., No. 15-1797, 2015 WL 4757935, at *2 (D.N.J. Aug. 11, 2015) (quoting Advanced Enter. Recycling, Inc. v. Bercaw, 869 A.2d 468, 472 (N.J. App. Div. 2005)).

Here, any direct claims brought by Merrick must fail because Merrick was not an owner of the funds in the escrow account. Indeed, it is well settled that the depositor holds title in escrow accounts until the completion of all escrow conditions. See In re Arrow Mill Dev. Corp., 185 B.R. 190, 194 (D.N.J. 1995) (finding "if the escrow condition which would have vested title in grantee does not occur, legal and equitable title remain in grantor"); In re Mushroom Transp. Co., Inc., 382 F.3d 325, 338 n.9 (noting, "under escrow arrangement, legal title remains in a depositor until a condition precedent is satisfied."). Merrick was not the depositor; the passengers were. As such, Merrick cannot show that it had title to the allegedly converted funds.

In addition, the record demonstrates that VNB did not and could not exercise dominion and control over the funds in the escrow account. In general, an entity does not exercise dominion and control over an account which is subject to the instructions of another. <u>See</u> <u>North Haledon Fire Co. No. 1 v. Borough of North Haledon</u>, 425 N.J. Super. 615 (App. Div. 2012) (finding that a conversion claim by a third party failed against entity having contract with borough to administer retirement account because entity did not exercise dominion and control over money in the account which was subject to the borough's instructions); <u>Pereira v. United Jersey Bank</u>, 201 B.R. 644, 676 (S.D.N.Y. 1996) (finding that a bank subject to a contract with its customer did not exercise dominion and control over funds in the customer's account). Here, the funds in the escrow account were subject to the Depository Agreement between Direct Air and VNB. VNB did not have the authority to release any funds without approval from Direct Air.

For the above reasons, VNB must be granted summary judgment as to Merrick's conversion claim.

1. <u>Aiding and Abetting Conversion</u>

Merrick and JetPay also seek to bring aiding and abetting conversion claims against VNB based on the theory that VNB aided and abetted Direct Air's conversion of passenger funds. Plaintiffs allege that they may bring these claims as subrogees to the passengers. For the same reasons that the Court finds that Merrick and JetPay cannot be equitably subrogated to the passengers' aiding and abetting fraud claims, they likewise cannot be subrogated to the passengers' aiding and abetting conversion claims. Summary judgment must be granted to VNB.

## III. CONCLUSION

For the reasons set forth herein, Defendant VNB's motion for summary judgment against Plaintiff American Express is **GRANTED** as to its claim for breach of fiduciary duty and

**DENIED** as to its claim for negligence/gross negligence.  VNB's motions for summary judgment against Plaintiffs JetPay and Merrick are **GRANTED** as to their claims for negligent misrepresentation, aiding and abetting fraud, conversion, aiding and abetting conversion, and breach of fiduciary duty, and **DENIED** as to their claims for negligence and breach of contract. Plaintiffs American Express, JetPay and Merrick's motions for summary judgment are **DENIED**. An appropriate Order accompanies this Opinion.

**Dated: November 30, 2017**

*/s Madeline Cox Arleo*
**HON. MADELINE COX ARLEO**
**UNITED STATES DISTRICT JUDGE**